IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LORI NEGRETE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:08CV276 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Lori Negrete, proceeding pro

se, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant

Commissioner denying her application for Social Security Disability (DIB) payments.  The

Commissioner's final decision is based on a finding by an Administrative Law Judge (ALJ) that

Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable

regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket entry no. 12) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil
Rules 5 and 7(C).  In accordance with these rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth
(except for year of birth), and any financial account numbers from its consideration of Plaintiff's
arguments and will further restrict its discussion of Plaintiff's medical information to the extent
necessary to properly analyze the case.

judgment (docket entry no. 13) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB on December March 28, 2005, claiming disability due to degenerative disc disease causing bulging discs at L3 and L4, pain that radiated through her left leg, blood clots on her liver, iron absorbency problems, anemia, and anxiety, with an alleged onset date of February 6, 2004. (R. at 54-56, 65.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 43-45, 48-50.) Plaintiff requested a hearing and on June 6, 2007, accompanied by counsel, she testified via video conference before an ALJ. (R. at 274-98.) On October 26, 2007, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act because she was able to perform jobs that exist in significant numbers in the national economy given her age, education, work experience, and residual functional capacity. (R. at 23.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 4-6.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by an ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d),

404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to her past relevant work[4] based on an assessment of the claimant's residual functional

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will

not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his

burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to

testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all the claimant's

impairments so that the VE can offer testimony about any jobs existing in the national economy

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when

the hypothetical posed represents *all* of the claimant's substantiated impairments will the

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

capable of SGA, then the claimant is found to be disabled and entitled to benefits. 20 C.F.R. §§

416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset

of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe

impairments of cervical and lumbar degenerative disc disease and mild obesity, but that these

impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as

required for the award of benefits at that stage. (R. at 13-17.) The ALJ next determined that

Plaintiff had the RFC to "perform a range of sedentary work that involves lifting no more than

ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and

small tools." (R. at 17.) Additionally, the ALJ noted that Plaintiff has no "communicative,

manipulative, visual, or environmental limitations", and is able to "perform work activity on a

sustained, regular and continuous basis for eight hours per day, forty hours per week." (R. at 17.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her

past relevant work as a records management clerk because of its medium level exertional

requirements. (R. at 23.) At step five, after considering Plaintiff's RFC and consulting the

Medical Vocational Guidelines, the ALJ found that Plaintiff "has the ability to meet the demands

of basic work related activities on a sustained basis, and her determined limitations do not

significantly erode and have little or no effect on the unskilled sedentary occupational base." (R.

6

at 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 24.)

Construing Plaintiff's pro se submission liberally, Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J)("Pl.'s Mot.") In considering Plaintiff's Complaint and Motion for Summary Judgment together, it appears that she offers three arguments in support of her position: (1) the ALJ did not properly consider the opinions of Plaintiff's treating physicians;  (2) that substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled under the Act because the ALJ improperly discounted Plaintiff's credibility in regard to her description of the extent of her impairment(s); and (3) the ALJ's determination under the Medical-Vocational Guidelines that Plaintiff is not disabled is not supported by substantial evidence. (Compl.; Pl.'s Mot.) Defendant argues that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof)("Def.'s Mem."at 12.)

**1.      Plaintiff contends that the ALJ did not properly consider Plaintiff's treating physicians' opinions.**

Plaintiff contends that the ALJ did not properly consider Plaintiff's treating physicians' opinions. (Compl.; Pl.'s Mot.)  Specifically, Plaintiff contends that the ALJ evaluated her case by solely considering her mental status and not her extensive physical limitations as evidenced in her medical records.  (Compl.)  Additionally, Plaintiff contends that the ALJ did not properly consider treating physician Dr. Gibellato's opinions as to Plaintiff's specific work limitations. (Pl.'s Mot.)

7

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

A review of the Record demonstrates that the ALJ properly and thoroughly considered the medical opinions of Plaintiff's treating physicians. (R. at 13-17.) It was the medical records and

8

doctor's reports from Plaintiff's own treating physicians that formed the basis of the ALJ's opinion that Plaintiff had the severe physical impairments of cervical and lumbar disc disease and mild obesity. (R. at 13-14.) Indeed, contrary to Plaintiff's assertions, the ALJ found that all of Plaintiff's severe impairments stemmed from her physical conditions. In fact, when considering Plaintiff's mental impairments, the ALJ found that Plaintiff's "mental impairment of depression does not cause more then minimal limitation in the Claimant's ability to perform mental work activities and is therefore non-severe." (R. at 16.) It is therefore clear from the ALJ's extensive review of Plaintiff's medical files, and from the conclusions he drew based on Plaintiff's treating physicians' opinions, that he properly considered all of Plaintiff's physical, as well as mental, limitations in determining her overall impairment.

Additionally, Plaintiff contends that the ALJ did not properly consider treating physician Dr. Gibellato's opinions as to Plaintiff's specific work limitations. However, as previously noted, the ALJ was not required to accept Dr. Gibellato's opinions about the Plaintiff's ability to work because it is the responsibility of the ALJ to make that determination. See 20 C.F.R. § 416.927(e)(1). It should nevertheless be noted that the ALJ did, in fact, consider Dr. Gibellato's recommendations, but found that his opinions as to Plaintiff's sitting, postural and manipulation limitations were contrary to the Doctor's own objective findings, as well as to the Plaintiff's reported daily activities. (R. at 21.) Significantly, Dr. Gibellato himself had found that despite Plaintiff's complaints of pain and tenderness in some regions, Plaintiff had maximum, 5/5 strength through her bilateral upper and lower extremities, had no instabilities in her joints, and had a full range of motion. (R. at 210, 260.) Additionally, although Plaintiff had suffered some left knee problems, Dr. Gibellato's notes indicate that the condition was improved with proper

9

treatment and that Plaintiff was reportedly engaging in a walking routine. (R. at 257, 258, 259, 260.) Finding that the ALJ analyzed Plaintiff's physical and mental impairments, and that he appropriately considered the opinions of Plaintiff's treating physicians, the Plaintiff's contention that the ALJ erred by not affording proper weight to Plaintiff's treating physicians is without merit.

**2.      Plaintiff contends that the ALJ improperly discounted Plaintiff's credibility.**

Plaintiff also asserts that the ALJ erred by failing to give proper weight to her subjective complaints of pain. (Pl.'s Mot.) Specifically, she contends that the ALJ improperly questioned her credibility and argues that her medical records do not contradict her testimony as to the amount of pain she experiences due to her physical limitations. (Pl's Mot.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment

10

reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (the controlling appellate authority for this court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that a claimant's subjective allegations of pain are not, alone, conclusive evidence that the claimant is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

11

At the hearing before the ALJ, in support of her subjective complaints of pain and limitations as a result of her physical impairments, Plaintiff testified that she suffered from sharp pains in her left hip and left groin that radiated through her left leg. (R. at 282, 288.) Plaintiff explained that her leg and hip pain could be debilitating, preventing her from completing tasks around her house. (R. at 280, 287, 288.) In addition to hip and leg pain, Plaintiff testified that she experienced periods during which her arms and hands would go completely numb, preventing her from utilizing them. (R. at 291-92.) Plaintiff testified that due to her pain, she often had restless or sleepless nights, being forced to stay awake due to the pain she was experiencing. (R. at 285-86.) Even though she had been prescribed medication to help her sleep, she stated that it only helped her fall asleep initially, and that she would wake up after only a few hours, unable to go back to sleep. (R. at 293-94.)

It is clear from the ALJ's opinion that he performed a thorough analysis of both the subjective and objective medical evidence presented to him in making his determinations as to Plaintiff's credibility and RFC. The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible, but any credible aspect of her testimony does not warrant a finding of disability as within the meaning of the regulations." (R. at 22.) Specifically, the ALJ concluded that Plaintiff's description of her daily activities was inconsistent with the amount of pain she allegedly experienced. (R. at 22.) For example, Plaintiff testified at the hearing before the ALJ that she prepares her husband's lunch daily and cooks dinner about twice a week for her family. (R. at 280.) Additionally, Plaintiff reported on a "function" report as part of the

12

application process that she was able to drive, went grocery shopping once a week with her mother, and was able to take care of her personal needs. (R. at 84-86.) The ALJ also noted that Plaintiff told a treating physician that she had attended a concert where she sat on the ground, and that she had also increased her walking regimen. (R. at 22.)

In addition to considering Plaintiff's subjective complaints and daily activities, the ALJ also considered the medical records and evidence presented at the hearing in making his RFC and credibility determinations. The ALJ conducted a thorough review of Plaintiff's medical history, examining each alleged symptom and condition and the corresponding medical history. (R. at 19-23.) The ALJ noted during his analysis that although Plaintiff complained of pain, or felt tenderness in certain regions, many of the medical tests conducted by her treating physicians had minimal or insignificant results. (R. at 19-21.) Additionally, Plaintiff's medical records indicated that despite her alleged pain, she demonstrated maximum, 5/5 strength throughout her upper and lower extremities. (R. at 210, 260.) By April of 2007, the ALJ noted from Dr. Gibellato's progress notes that Plaintiff presented at his office "as alert, oriented times three, and no acute distress, and she demonstrated a pleasant affect." (R. at 21.) After a thorough review of Plaintiff's medical records, and questioning the veracity of some of the statements made by Plaintiff and Dr. Gibellato, the ALJ nevertheless gave deference to the length of time over which Plaintiff had made complaints about her pain, and the extensive medical treatment she had received. (R. at 23.) As the ALJ explained in his opinion, he was required to consider the State Agency's assessment that Plaintiff had the capacity for "light work," but given the extent of her medical history and her subjective complaints, the ALJ nevertheless found that an even more restrictive RFC was warranted. (R. at 23.)

The ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions.  The ALJ found that the Plaintiff had the severe impairments of cervical and lumbar degenerative disc disease, and mild obesity, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-17.)  The ALJ accordingly found that while such impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible. (R. at 22.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of her pain was less then credible.  The record additionally indicates that the ALJ, despite his credibility determinations, nevertheless gave deference to Plaintiff's subjective complaints of pain and medical history by finding that she had a more limited RFC than recommended by the Agency's expert.  Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record and should not, therefore, be overturned.

3.      **Plaintiff contends that the ALJ's determination that Plaintiff is not disabled under the Medical-Vocational Guidelines is not supported by substantial evidence**

Although not specifically articulated by the Plaintiff, this Court interprets her Complaint and Motion for Summary Judgment to also challenge the validity of the ALJ's decision in making the determination that she was not disabled under the Act pursuant to the Medical-Vocational Guidelines ("Grids").  The Plaintiff stated that she felt as though her case was not "completely and fairly evaluated", and that based on her medical records, the ALJ's disability

14

determination was not supported by the substantial weight of the evidence. (Pl.'s Mot.) Finding

that there are potential issues as to how the ultimate disability determination was made pursuant

to the Grids, this Court shall analyze the potential issues involved.

Prior to determining whether the Grids apply at the fifth step of the analysis, an ALJ must

first determine the claimant's RFC. 20 C.F.R. § 404.1569; SSR 83-10. Based on the RFC

determination, the ALJ must then consult the Grids to determine if the claimant meets a rule (or

listing) in the Grids. 20 C.F.R. § 404.1569; SSR 83-10. The Grids catagorize jobs by their

physical-exertion requirements,[6] namely, sedentary,[7] light,[8] medium, heavy, and very heavy. See

SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2,

and 3, respectively), and a specific rule for the heavy and very heavy levels (rule 204.00). SSR

83-10; 20 C.F.R.. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first

determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional

level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education,

and previous work experience, the rule directs a finding of "disabled" or "not disabled."

Utilization of the Grids is predicated on the claimant suffering from exertional limitations and

the Grids are not applicable if the claimant suffers solely from nonexertional limitations. 20

---

[6] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitations is an impairment-caused limitations which affects ones capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[8] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

15

C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). The reasons for the rule is that nonexertional limitations may limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2). If the claimant is found to be disabled on the strength requirement alone (i.e., a claimant is limited to light work and meets the other categories in rule 202.01), then there is no need to examine the effects of the nonexertional limitations. However, if a rule directs a finding of "not disabled" based on the strength requirement (i.e., the claimant is limited to light work and meets on the categories in rule 202.10), then the ALJ cannot utilize the Grids; instead, a VE must be utilized to take into account the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform. Walker, 889 F.2d 49-50.

Here, the issue is whether the Plaintiff's pain, which was recognized by the ALJ as affecting the Plaintiff's RFC determination, was significant enough to be considered as a nonexertional limitation on Plaintiff's ability to perform work-related tasks. As discussed earlier, if Plaintiff's pain only affected her nonexertional limitations, or had a minimal nonexertional

16

effect on her work capabilities at a particular RFC level, then a finding directed by the Grids would have been sufficient, and testimony by a VE unnecessary. Eason v. Astrue, No. 2:07-cv-00030-FL, 2008 WL 4108084, at *5 (E.D.N.C. Aug.29, 2008) (citations omitted). However, if Plaintiff's pain constituted a significant nonexertional limitation, then the ALJ's reliance on the Grids for a disability determination would be in error. See Walker, 889 F.2d 49-50; see also Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983).

Although the language in the ALJ's opinion is not explicit, it is clear from his analysis and a review of the record that the ALJ found Plaintiff's pain contributed primarily to her exertional limitations. Specifically, the ALJ found that Plaintiff suffered from very few nonexertional limitations generally, and thus, any contribution her pain had on such limitations was minimal. The ALJ, adopting the opinion of Plaintiff's own treating physician, found that Plaintiff had "a good and very good ability to understand, remember, and carry out complex and detailed job instructions." (R. at 16.) Plaintiff was also described as being able to relate well to coworkers, interact with supervisors, function independently, demonstrate reliability, and maintain her personal appearance. (R. at 16.) Additionally, Plaintiff's pain was not mentioned in relationship to non-exertional limitations, but was discussed primarily as a contributor to the limitations on her physical strength. (R. at 17-23.) It is therefore clear that the ALJ's findings were that Plaintiff's pain, although perhaps having some minimal effect on her nonexertional limitations, primarily contributed to her ability to perform exertional work related activities, and as such, the ALJ's reliance on the Grids for his disability determination (which dictated a finding of no disability entitled to benefits) was proper.

17

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 12) be DENIED; that Defendant's motion for summary judgment (docket entry no. 13) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer, Plaintiff, and counsel for the Defendant.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                    /s/
                                        _____
                                        Dennis W. Dohnal
Date: DEC 1 - 2008                      United States Magistrate Judge
Richmond, Virginia